Joseph G-. Fbitsch, J.
This is an action by the plaintiff bank against the defendant bank for the conversion of $57,250. The action arises out of the dishonor by defendant bank of 13 checks dated August 5,1970 totalling the sum of $32,725, and 10 checks dated August 6,1970 totalling $24,525, which were presented for payment by the plaintiff bank. The defendant bank paid three checks dated August 6, 1970 totalling $8,200, which were presented at the same time as the 10 which were dishonored.
The proofs have established that on the morning of August 5, 1970 one Harry Shapiro, who had checking accounts in both plaintiff and defendant banks, cashed 13 checks dated August 5,1970 drawn on the First National Bank of Rochester totalling $32,725, at one of the plaintiff’s branches, and deposited the proceeds in his checking account with the defendant, First National Bank of Rochester. At the time of this deposit Harry Shapiro had a balance in the account with the defendant bank in the amount of about $26,815.25; however, the defendant bank had honored the payment of another group of 13 checks which were dated August 4, 1970 and thus, after the cash deposit made on the 5th of August, 1970 there remained a balance in his account with the defendant bank of about $26,800.25, after the deduction of certain bank service charges. The August 5,1970 checks, 13 in number, totalling $32,725, were forwarded to the First National Bank of Rochester on Thursday, August 6, 1970 and were returned to the plaintiff bank by the defendant bank on Monday, August 10, 1970 unpaid, with an attached sticker *525 indicating the reason for dishonor as ‘ ‘ uncollected funds ”. The return was timely pursuant to the clearing house rules.
On Friday, August 7, 1970 an officer of the defendant, one Michael S. Cronin, by telephone conversation with an officer of the plaintiff, one Harold Glenn, advised plaintiff that defendant was returning these 13 checks to the plaintiff unpaid and that he believed they were drawn against uncollected funds, and that if the defendant ended up with a residual balance in Shapiro’s account, after offsetting Shapiro’s obligations to the defendant bank for loans, and after everything settled down, the plaintiff might apply part of the checks being returned against such balance. The two officers on this date and prior during the same week also discussed the suspicion that Harry Shapiro was check-kiting between the two banks and that the defendant’s officer would return to the plaintiff bank all checks not covered by cash on hand.
On August 11, 1970 the defendant further returned to the plaintiff 10 of the 13 checks dated August 6,1970 drawn on First National Bank of Rochester which were deposited by Harry Shapiro in his account in the plaintiff bank, and which were in the aggregate amount of $24,525, because they were drawn on uncollected funds. These were returned to the plaintiff timely under the clearing house rules.
The proof further establishes that an employee of the defendant bank was directed by defendant’s credit manager on August 7, 1970 to program the computer with an “ N ” status on the Shapiro account. An ‘ ‘ N ” status on this account would cause the computer to reject all checks and prevent further posting of them. However, the proof further shows that through error the “ N ” status was not properly placed on the computer and the computer programmed the payment of the 10 checks dated August 6, 1970 totalling $24,525. On Monday, August 10, 1970 the defendant’s credit manager, on discovery of the error, caused the entries in the computer journal to be reversed, an “ N ” status placed on the account, and the 10 checks dated August 6,1974 returned to the plaintiff bank, and the defendant’s offset of $19,200.25, for various demand notes, to be posted to the account.
The plaintiff contends that the 13 checks dated August 5, 1970 totalling $32,725, timely returned under the clearing house rules, under the sticker ‘ ‘ "Uncollected Funds”, should have been returned under sticker “ Insufficient Funds ”, since at the time there were on deposit with the defendant funds to pay a portion of these checks, about $26,800 and that, if so returned, *526 the plaintiff wonld have had the opportunity to have some of them certified by the defendant bank. I do not agree with this position. The defendant had put plaintiff on due notice by its officer’s telephone conversation of August 7, 1970 of the defendant’s intention to dishonor the checks and make an offset, and thereafter the plaintiff had ample opportunity to' inquire into the specifics of the dishonor.
Subdivision (3) of section 3-508 of the Uniform Commercial Code reads in part as follows: “ Notice may be given in any reasonable manner. It may be oral or written and in any terms which identify the instrument and state that it has been dishonored.” (See First Pennsylvania, Banking & Trust Co. v. De Lise, 186 Pa. Super. Ct. 398.)
The defendant bank, when it gave oral notice to plaintiff bank on August 7, 1970 of its dishonor of the 13 checks dated August 5, 1970 and of its intent to offset against the Shapiro account obligations due it by Mr. Shapiro, and by indicating that the account status could be determined when the computer settled down, was exercising its right under the Uniform Commercial Code and within the time as prescribed in the clearing house rules. Section A-104 (subd. [1], par. [j]) of .the Uniform Commercial Code reads as follows: ‘ ‘ Settle means to pay in cash, by clearing house settlement, in a charge or credit or by remittance, or otherwise as instructed. A settlement may be either provisional or final.”
In Anderson, Uniform Commercial Code (2d ed., vol. 3, example No. 6, p. 175) the author states in part: “ Subsection (1) (j): The term ‘ settle ’ is a new term in bank collection language that has .substantial importance throughout Article 4. In the American Bankers Association Bank Collection Code, in deferred posting statutes, in Federal Reserve regulations and operating letters, in clearing house rules, in agreements between banks and customers and in legends on deposit tickets and collection letters, there is repeated reference to ‘ conditional ’ or ‘ provisional ’ credits or payments. Tied in with this concept of credits or payments being in some way tentative, has been a related but somewhat different problem as to when an item is ‘ paid ’ or ‘ finally paid ’ either to determine the relative priority of the item as against attachments, stop payment orders and the like or in insolvency .situations. * * * Similarly, some cases fail to recognize that within a single bank, particularly a payor bank, each item goes through a series of processes and that in a payor bank most of these processes are preliminary to the basic act of payment or ‘ final payment ’.”
*527 The defendant gave proper notice under the Uniform Commercial Code and. its action of dishonoring the 13 checks dated August 5, 1970 was legal and timely.
The plaintiff bank contends, relative to its claim for conversion by the defendant bank of the 10 checks dated August 6, 1970 totalling $24,525, that- these checks were in fact paid to plaintiff by the defendant because the defendant bank had completed the process of posting and that they had actually been paid through the computer posting process and in fact three checks in the group of 13, totalling $8,200, were paid and honored. The defendant’s decision to pay these three checks was proper procedure and at the convenience of the defendant bank and in compliance with subdivision (2) of section A-303 of the Uniform Commercial Code, which reads as follows: “Subject to the provisions of subsection (1) items may be accepted, paid, certified or charged to the indicated account of its customer in any order convenient to the bank.”
See Anderson, Uniform Commercial Code (2d ed., vol. 3, example No,. 6, p. 293) which reads as follows: “As between one item and another no priority rule is stated, other than the convenience of the bank. This rule is justified because of the impossibility of stating a rule that would be fair in all cases, having in mind the almost infinite number of combinations of large and small checks in relation to the available balance on hand in the drawer’s account; the possible methods of receipt; and other difficulties. Further,, where the drawer has drawn all thé checks, he should have funds available to meet all of them and has no basis for urging one should be paid before another; and the holders have no direct right against the payor bank in any event, unless of course, the bank has accepted, certified or finally paid a particular item, or has become liable for it under Suction 4 — 302. Under subsection (2) the bank obviously has the right to pay items for which it is itself liable ahead of those for which it is not.”
Further, as to the contention that the August 6, 1970 checks were paid because posting process was complete, it appears that the defendant bank did not complete its posting, but being alerted to suspicion regarding the Shapiro account, directed that an “ N ” status be placed on the account, and when realizing this was not done as directed, reversed the erroneous entries made by the computer with respect to said entries. The defendant bank acted within its right under section 4r-109 of the Uniform Commercial Code which reads as follows: “ The ‘ process of posting ’ means the usual procedure followed by a payor *528 bank in determining to pay an item and in recording the payment including one or more of the following or other steps as determined by the bank; (a) verification of any signature; (b) ascertaining that sufficient funds are available; (o) affixing a ‘ paid ’ or other stamp; (d) entering a charge or entry to a customer’s account; (e) correcting- or reversing an entry or erroneous action with respect to the item” and which gives a payor bank in subdivision (e) the opportunity to correct or reverse an entry made. See West Side Bank v. Marine Nat. Exch. Bank (37 Wis. 2d 661) where the court held that until the clearing house deadline had expired, the bank had retained its right to reverse the entry pursuant to subdivision (e) of section 4 — 109 of the Uniform Commercial Code.
The defendant bank here had corrected the error and exercised its right of setoff, as prescribed by the Uniform Commercial Code, within the time of the clearing house rules. See, also, 3 Anderson, Uniform Commercial Code (2d ed., example No. 3, p. 195). The author states as follows: “ A payor bank receives in the mail on Monday an item drawn upon it. The item is sorted and otherwise processed on Monday and during Monday night is provisionally recorded on tape by an electronic computer as charged to the customer’s account. On Tuesday a clerk examines the signature on the item, and makes other checks, to determine finally whether the item should be paid. If the clerk determines the signature is valid1, and makes a decision to pay and all processing of this item is complete, e.g., at 12 noon on Tuesday, the ‘ process of posting ’ is completed at that time. If, however, the clerk determines the signature is not valid or that the item should not be paid for some other reason, the item is returned to the presenting bank and in the regular Tuesday night run of the computer the debit to the customer’s account for the item is reversed or an offsetting credit entry is made. In this case, as in Example 2, there has been no determination to pay the item, no completion of the process of posting and no payment of the item.”
There was no determination by the defendant bank to pay the 10 checks dated August 6,, 1970, no completion of the process of posting, and thus, no payment of these checks.
The plaintiff’s conversion action against the defendant for the sum of $57,250 is herewith dismissed on the merits, the plaintiff having failed to prove its case by a fair preponderance of the credible evidence.
Let judgment be entered for the defendant to that effect.